LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
ROBERT V. PRONGAY (#270796)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com
lglancy@glancylaw.com
mmgoldberg@glancylaw.com
rprongay@glancylaw.com

*Attorneys for Plaintiff Sol M. Eskinazi*
[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOL M. ESKINAZI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ARROWHEAD RESEARCH CORPORATION, CHRISTOPHER R. ANZALONE, AND BRUCE D. GIVEN,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sol M. Eskinazi ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by Arrowhead Research Corporation ("Arrowhead" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities, other than Defendants, who purchased the common stock of Arrowhead during the period August 12, 2014 through October 8, 2014, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws (the "Class").

2.      Arrowhead is a biopharmaceutical company whose main business is developing RNA Interference ("RNAi") therapeutics.  RNAi is a process by which the RNA molecules prevent gene expression and thereby destroys specific micro-RNA ("mRNA") molecules.  Arrowhead's focus is to develop drugs that target the RNAi mechanism that will suppress disease-causing genes.

3.      ARC-520 (or the "Drug") is one of Arrowhead's main products and crucial to its business and operations.

4.      ARC-520 is an RNAi therapeutic that targets the hepatitis B virus for treating chronic hepatitis B.  ARC-520 is currently being tested for its effectiveness in using RNAi to halt the production of hepatitis B genes, which will reduce the number of infectious hepatitis B particles.

5.      On October 8, 2013, the Company announced the completion of the Phase I study of ARC-520, which tested the drug in non-human primates such as chimpanzees, as well as mice and rats.

6.      On March 24, 2014, the Company announced the commencement of the Phase IIa study on ARC-520, which tested the drug in humans.  The Phase IIa study examined the enrolled hepatitis B patients and assigned them randomly to either receive ARC-520, at doses of 1 mg/kg or 2 mg/kg or a placebo.

7.      The measure of effectiveness of the drug is to have a log reduction and duration of reduction of hepatitis B surface antigens ("HBsAG"), which measure the presence of hepatitis B in the body.

8.     In the Phase I study of ARC-520 involving a chimpanzee infected with hepatitis B, the Company indicated that treatment with ARC-520 caused a 0.8 log reduction in HBsAG.

9.     On August 12, 2014, Defendants held a conference call to report on Q3 2014 earnings and the progress of the Phase IIa study.  During this call, Defendants made materially false and misleading statements and/or failed to disclose the true viral reduction level that ARC-520 can induce in humans, suggesting that its viral reduction was similar to the chimpanzee result (0.8 log reduction) and closer to 1 log (90% reduction).

10.     On October 8, 2014, the Company announced the results of its Phase IIa study, revealing that ARC-520 dosed at 2 mg/kg only induced a 0.3 log reduction in HBsAG – far short of what Defendant previously suggested.

11.     On this news, the Company's stock fell $5.48 per share, or almost 44%, on extraordinary volume from its previous closing price to close at $7.03 per share on October 8, 2014.

## <u>JURISDICTION AND VENUE</u>

12.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

14.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

15.     In connection with the acts, conduct and other wrongs alleged herein, defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16.     Plaintiff purchased Arrowhead common stock during the Class Period and has suffered damages as set forth in the accompanying certification.

17.     Defendant Arrowhead Research Corporation is a Delaware corporation that purports to be a biopharmaceutical company developing targeted RNAi therapeutics. The Company's principal executive offices are located at 225 South Lake Avenue, Suite 1050, Pasadena, California 91101.  During the Class Period, the Company's stock traded on the NASDAQ Stock Market under the symbol "ARWR."

18.     Defendant Christopher R. Anzalone ("Anzalone") has served as the Company's President and CEO at all relevant times.

19.     Defendant Bruce D. Given ("Given"), has served as the Company's COO and Head of Research and Development at all relevant times.

20.     Defendants Anzalone and Given are collectively referred to hereinafter as the "Individual Defendants."

21.     Each of the Individual Defendants:

a)     directly participated in the management of the Company;

b)     was directly involved in the day-to-day operations of the Company at the highest levels;

c)     was privy to confidential proprietary information concerning the Company and its business and operations;

d)     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

f)     approved or ratified these statements in violation of the federal securities laws.

22.     As officers, directors, and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ Global Select and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

23.     Arrowhead is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

24.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Arrowhead under respondeat superior and agency principles.

25.     Defendant Arrowhead and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

26.     The Class Period begins on August 12, 2014 when the Company issued a press release providing an update on the Phase IIa study of ARC-520, which was also filed on Form 8-K with the SEC.  The press release touted that the ARC-520 response in human hepatitis B patients was similar to the chimpanzee results, stating in relevant part:

ARC-520 Phase 2a Study Update

- Completed dosing of 1 mg/kg and 2 mg/kg dose cohorts

- *Initial blinded data suggest that the magnitude of HBsAg knockdown is similar to non-human primate studies, including the chronically infected chimpanzee reported on previously*

- *Duration of knockdown appears to be substantially more sustained than in non-human primates, with patients in the 2 mg/kg group still demonstrating*

*substantial knockdown after 8 weeks, which is the most recent time point available*

- HBsAg levels appear to continue to decline in a number of patients at the 8 week time point in the 2 mg/kg group

- Based on initial review, dosing less frequent than once monthly will be explored in Phase 2b

- ARC-520 continues to be well tolerated, with no dropouts or serious adverse events reported

- The overall rate of AEs has been lower in the Phase 2a than in the Phase 1 normal volunteer study and safety labs continue to show no indication of end organ toxicity

- Enrolled and dosed additional subjects at 3 mg/kg in the still open normal volunteer study and the dose performed well, without detected differences from safety and tolerability results at the other doses. Overall AEs do not appear to be increasing in frequency or severity with dose

- Received IRB and DSMB approvals to proceed and began enrolling an additional dose cohort at 3 mg/kg in the Phase 2a patient study

(emphasis added)

27.    On that same day, Arrowhead held a conference call to discuss the Q3 2004 earnings results and the progress of the clinical data for the Phase IIa study of ARC-520 collected at that point. Both Individual Defendants were on the call.

28.    During the conference call, Defendant Anzalone made the following initial remarks concerning the PhaseIIa study, which touted the reduction ability of ARC-520 in humans:

As you know, earlier this year we initiated a dose finding Phase 2a study designed to inform a multi-dose Phase 2b study. ***Our two primary goals were to identify a dose that, A, induces a 90% reduction of circulating s-antigen after a single administration*** and B, provides durable enough knockdown to enable once per month dosing. ***Given our studies in multiple animal models, we were quite confident that we could achieve this, but just did not know what that dose would be in humans.***

Our interim results have been extremely exciting. ***We completed dosing of 1 and 2 milligrams per kilogram in June and those studies still blinded, several important conclusions may already be drawn. We are seeing clear knockdown in both groups and duration of that knockdown has been substantially longer than we expected.***

***We currently have data from the 2 milligrams per kilogram cohort as far out as two months after dosing and in these patients we perceive -- and in the patients we perceive as having received ARC-520, we still see substantial knockdown at this time point.***

29.     On the same call, Defendant Given made the following remarks expounding on the results and suggesting that the ARC-520 response in human hepatitis B patients was similar to the chimpanzee results:

We have surface antigen data for all patients into 2 mg per kg dose group through six weeks and for five of eight patient's we have data through eight weeks.

Again with the caveat that the data is still blinded we believe the knockdown is clearly deeper in this group versus 1 mg per kg and at eight weeks the patients we perceive is having received active drug so surprisingly large reductions in surface antigen.

***Overall, duration of knockdown appears to be substantially more sustained in humans compared to the non-human primates we have studied at the same doses. For the depth of***

CLASS ACTION COMPLAINT

8

*knockdown appears to be similar in magnitude with what we see in non-human primates of same doses, including the HBV infected chimpanzee presented at AASLD last year.*

*****

So how should we think about these results? ***The dose range for knockdown in humans appears to be similar to that seen in nonhuman primates, including the previously reported HBV infected chimpanzee.***

(emphasis added)

30.    With regards to the ability of ARC-520 to achieve higher than a 0.8 log reduction, Defendant Anzalone had the following exchange with analyst Michael Yee of RBC Capital Markets expressing his confidence in achieving such reduction level:

Michael Yee - RBC Capital Markets
Yeah. Hi. Good afternoon. Thanks guys. A couple of questions, first on your ongoing Phase 2a study. You should have qualified 1 mg and 2 mg curves, ***people are implying that 2 mgs is around 0.8 log reduction like the animal study. But what is your confidence that 3mgs is going to be greater than 0.8.*** Are you just comparing that to the current time point and the drop you've seen in the time point in the 2 mgs. ***How confident are you that, that will be greater than a 1 mg -- excuse me, 1 log?***

And then going forward, since we're trying to ultimately get functional here in the Phase 2b study, how confident are you in a functional cure if you're not above 1 log. And how many doses will you get and what time points are you looking at your -- to actually look at the functional cure?

Dr. Christopher Anzalone - President and CEO
Sure, I'll take a crack and I'll hand it over to Bruce as well. ***Regarding our confidence level in achieving the log knockdown with 3 mgs/kg, we feel pretty good about that. What we saw in one 2 mgs/kg is that the depths of knockdown seems to track reasonably well with nonhuman primate***

CLASS ACTION COMPLAINT
9

***models.*** But of course the durability of the fact is, it's substantially longer. And so that that gives us -- that gives us good confidence that 3 mgs/kg will give us good deep knockdown.

\*\*\*\*\*

(emphasis added)

31. Defendant Anzalone also had the following exchange with analyst Alethia Young of Deutsche Bank expressing his confidence in ARC-520 achieving a 1-log reduction:

Alethia Young - Deutsche Bank
Great, thanks for taking my question, and congrats on the progress. I just wanted to ask about the 1 log theory again. ***Do you still stand by the 1 log knockdown, if you're seeing a longer duration of response?*** And then the second question is, run us through like why you believe 1 log is irrelevant (indiscernible) time point period right now, when you're basically at maybe 0.8, 0.7 right now and then I have one quick follow-up.

Dr. Christopher Anzalone - President and CEO
Sure. It's good question. Thanks very much Alethia. We think that that is an aggressive bogie and it is not clear to what we actually need to reach that level of knockdown. Having said that ***we think that we can certainly get there so we're more comfortable if we have it.*** The reason that we have, we have stuck to that bogie, is that the only thing that gives any kind of (indiscernible) semi reliable functional cures is interferon. After a year of interferon, about 10% of patients will reach a functional sure and all those patients who do get to that functional cure will see about half a log reduction in s-antigen in around 12 weeks and around one log after 24 weeks.

\*\*\*\*\*

(emphasis added)

CLASS ACTION COMPLAINT
10

32.     These statements above were materially false and misleading when made because Defendants knew that the data from the Phase IIa study of ARC-520 did not support their assertion that ARC-520 would induce such reduction levels of HBsAG in humans.

## THE TRUTH EMERGES

33.     On October 8, 2014, Arrowhead issued a press release stating that the Company was presenting the data for its Phase IIa study on ARC-520 at the American Association for the Study of Liver Disease ("AASLD") meeting to be held on November 7-11, 2014.

34.     Along with this announcement, Arrowhead published a late-breaking abstract for the AASLD Meeting.  The abstract revealed that there was a 39% reduction of the hepatitis B's HBsAG when a 1 mg/kg dose was administers and a 51% reduction of HBsAG when a 2 mg/kg dose was administered.

35.     As explained below, the 51% of HBsAG for the 2 mg/kg dose of ARC-520 equates to only a 0.3-log reduction – falling far short of the near 1-log reduction Defendants had previously suggested.

36.     On that same day, *TheStreet.com* published an article detailing the Company's disappointing results, which states:

Arrowhead Research Sinks on Disappointing Hepatitis B Drug
Data Adam Feuerstein
10/08/14 – 10:38 AM EDT

Arrowhead Research (ARWR) shares were sliding hard on disappointing data from its experimental hepatitis B therapy ARC-520, released at 10 a.m. EST.

**In an ongoing phase II study, ARC-520 dosed at 2 mg/kg induced a 0.3 log reduction in HBsAG, which is a measure of the presence of hepatitis B virus in the body. The observed treatment effect for ARC-520 at this dose is much lower than investors expected. When Arrowhead first announced results from this study in August, the company didn't provide specific numbers but hinted that the viral reduction was closer to (but not quite) 1 log. A 0.3-log reduction is nowhere close to 1-log reduction, which explains why Arrowhead stock is selling off.**

Arrowhead shares were down 30% to $8.80.

The specific data on ARC-520 disclosed this morning was contained in a late-breaker abstract for the American Association for the Study of Liver Disease (AASLD) annual meeting, which is being held in November.

The phase II study of ARC-520 in hepatitis B patients is ongoing and Arrowhead is exploring higher doses of the drug, hoping to see a more robust effect. But results from higher doses of ARC-520 have not yet been announced.

Here is the nut graph from the ARC-520 AASLD late-breaker abstract which caused Arrowhead shares to sink:

> ARC-520 activity is assessed by measuring percent change of quantitative HBsAg decline from baseline. For patients receiving ARC-520 in cohort 1, mean nadir HBsAg was -39% (range -22 to -57) with a mean change on day 85 of -31% (range -14 to -39). For patients receiving ARC-520 in cohort 2, mean nadir HBsAg was - 51% (range -46 to -59) with a mean change on day 85 of -22% (range -7

to -40). For cohort 2, the percent reduction in HBsAg was statistically significant vs placebo for Days 3 through 43 post dose. This is the first time that a reduction in HBsAg mediated through RNA interference has been shown in chronic HBV patients.

**There is a formula to convert percent change in quantitative HBsAg decline from baseline into a log reduction. The 51% reduction disclosed in the abstract for the 2 mg/kg dose of ARC-520 equates to a 0.3-log reduction.**

(emphasis added)

37.     Later that same day, *TheStreet.com* published another article further commenting on the Company's disappointing results, which states in relevant parts:

> Blame Arrowhead Management Entirely for Today's Epic Collapse Adam Feuerstein
> 10/08/14 – 3:52 PM EST
>
> Lay all the blame for Arrowhead Research's (ARWR) spectacular hepatitis B implosion today at the feet of CEO Chris Anzalone and the rest of the company's management team.
>
> All CEOs of publicly traded companies must manage investor expectations. For CEOs of early, development-stage biotech companies like Arrowhead, making sure Wall Street isn't delivered a nasty surprise is absolutely crucial. Credibility lost is very difficult to retrieve. Yet for some inexplicable reason, Anzalone totally botched the job.
>
> **For months, Anzalone and his team knew ARC-520 dosed at 1 mg/kg and 2 mg/kg yielded 0.2-log and 0.3-log reductions in hepatitis B viral load. Publicly and privately, however, Arrowhead executives led investors to believe that ARC-520 was more potent, achieving viral load reductions in the range of 0.7 log or higher.**

Arrowhead could have been honest with investors about ARC-520's mediocre performance at the two lowest doses. The company could have told investors, "We're not where we want to be with ARC-520 dosing and viral load reductions yet, but we think we can get there soon at higher doses and here's why."

If Arrowhead had played fair and conservatively earlier this year, perhaps the stock price might not have reached $26 in March like it did. Maybe the company's valuation bump would have been more modest. But I'm also more certain Arrowhead wouldn't trade at a year low like it is now because investors were misled and are now pissed off.

I asked Arrowhead management to explain their actions but received no response.

*****

(emphasis added)

38.    Following this negative news, the Company's stock fell $5.48 per share, or almost 44%, on extraordinary volume from its previous closing price to close at $7.03 per share on October 8, 2014.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Arrowhead securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs,

successors or assigns and any entity in which Defendants have or had a controlling interest.

40.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Arrowhead securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Arrowhead or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Arrowhead;

- whether the Individual Defendants caused Arrowhead to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Arrowhead securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

45.  Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Arrowhead securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Arrowhead securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CLAIM

### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Arrowhead securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

50.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Arrowhead securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Arrowhead as specified herein.

52.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of

Arrowhead's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Arrowhead and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Arrowhead securities during the Class Period.

53.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) Individual Defendants, by virtue of their responsibilities and activities as  senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's financial condition; (3) Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and were advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

54.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the true results of the ARC-520 clinical trials and Arrowhead's corresponding future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misstatements and omissions regarding the ARC-520 clinical trials throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Arrowhead securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Arrowhead's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Arrowhead

securities during the Class Period at artificially high prices and were or will be damaged thereby.

56.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Arrowhead's true operational condition, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Arrowhead's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

57.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

59.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) of
### The Exchange Act Against The Individual Defendants

60.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Arrowhead within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

64.     By virtue of their positions as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

65.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a)      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

b)      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  October 13, 2014            **GLANCY BINKOW & GOLDBERG  LLP**


                                    By: *s/ Robert V. Prongay*
                                    Lionel Z. Glancy
                                    Michael Goldberg
                                    Robert V. Prongay
                                    1925 Century Park East, Suite 2100
                                    Los Angeles, CA 90067
                                    Telephone: (310) 201-9150
                                    Facsimile:  (310) 201-9160

                                    **POMERANTZ LLP**
                                    Jeremy A. Lieberman
                                    Francis P. McConville
                                    600 Third Avenue, 20th Floor
                                    New York, New York 10016
                                    Telephone: 212-661-1100
                                    Facsimile:  212-661-8665

                                    **POMERANTZ LLP**
                                    Patrick V. Dahlstrom
                                    10 South La Salle Street, Suite 3505
                                    Chicago, Illinois 60603
                                    Telephone:  (312) 377-1181
                                    Facsimile:  (312) 377-1184

                                    *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, _Sol Eskinazi_ , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Arrowhead Research Corporation ("Arrowhead" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Arrowhead securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Arrowhead securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Arrowhead securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed __10__/__10__/__14__
        /(Date)

_____
(Signature)

_Sol Eskinazi_
(Type or Print Name)

**ARROWHEAD RESEARCH CORPORATION (ARWR)**                    **Eskinazi, Sol M.**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 8/19/2014 | PUR | 800 | $14.0555 |
| 8/22/2014 | PUR | 200 | $12.8750 |
| 8/26/2014 | SAL | 1,000 | $15.4231 |
| 8/28/2014 | PUR | 1,000 | $14.1988 |
| 9/15/2014 | PUR | 200 | $15.1184 |
| 10/8/2014 | SAL | 1,200 | $5.8426 |

eskinazi1